## Caperton v. Commonwealth.

(Decided November 26, 1920.)

### Appeal from Lawrence Circuit Court.

1. Criminal Law—Arrest—When Person Arrested May Rely on Self-Defense, if Indicted for Assaulting Officer.—The law of self-defense as applied to private persons does not apply to a person resisting an arrest unless he has reasonable grounds to believe and does believe that the officer is not acting in good faith or is using his office to gratify personal ill-will.

2. Criminal Law—Arrest—Presumption That Officer Did His Duty. —When an officer makes an arrest under a warrant or when a public offense has been committed in his presence the presumption will be that he has not exceeded his duty and powers in making the arrest.

3. Criminal Law—Arrest—Sufficiency of Evidence to Authorize Person Arrested to Rely on Self-defense.—When a person has been arrested by an officer in obedience to a warrant, or when a public offense has been committed in his presence, if the person

arrested desires to rely on self-defense in a prosecution for attacking the officer, he must show that the officer was unfriendly to him or that without provocation he commenced to beat him, or that the arrest was for the purpose of taking some undue advantage of him. The mere statement that the officer "commenced beating him" was not sufficient to authorize an instruction on the subject of self-defense.

4. Criminal Law—Self-defense—Right to Rely on When Third Person is Accidentally Wounded.—A person arrested who assaults one who has been summoned by an officer to help arrest him cannot defend his right to strike the third person unless he had the right to strike the officer.

5. Criminal Law—Accidental Striking—When Defense of, Not Allowable.—A person who cannot rely on the law of self-defense cannot excuse his act by claiming that it was accidental or unintentional.

FRED M. VINSON and W. F. CAIN for appellant.

CHARLES I. DAWSON, Attorney General, and JOHN W. WAUGH, Commonwealth Attorney, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

The appellant, Caperton, was indicted for maliciously striking William Clay with a black jack, a deadly weapon, with the intent to kill him, but did not do so. The jury that heard the case found him guilty and fixed his punishment at confinement for two years in the penitentiary.

On this appeal a reversal of the judgment on the verdict is asked on several grounds that will be noticed in the course of the opinion.

The facts are substantially as follows:

K. M. Short was the marshal of the town of Louisa at the time that Clay was struck by Caperton. The evidence shows that Caperton, a young man of bad moral character, was drunk and disorderly on the streets of the town and that a little while before he struck Clay, the marshal, seeing his condition, told him to go to his home in the town, but at this time did not attempt to arrest or detain him. Shortly after this Jim Norton saw Caperton on the street in a drunken condition and so told the marshal. When the marshal received this information he went to the place indicated by Norton and found Caperton on the street. He testifies that his purpose was to put him in the lockup and get him off the street, but he could not handle him by himself, and thereupon

he called to Clay and others to help him make the arrest and take Caperton to jail. When Clay was called on by the marshal to assist him he went to the place nearby where the marshal and Caperton were engaged in a scuffle. Clay, who knew Caperton, advised him when he came to where he was to go home, whereupon, according to the evidence of Clay and others who were present, Caperton purposely and deliberately struck him on the head with a black jack, otherwise known as a policeman's club, that he had forcibly taken from the marshal at a time when Clay had not touched or harmed him in any way, but, on the contrary, was advising him as a friend to go home.

Short testifies that he did not strike Caperton with the black jack which he had in his hand or pocket, and that Caperton took it away from him and struck Clay under the circumstances stated.

Caperton says that when Short advised him to go home he started on his way and had gotten a little distance when Short "walked up and commenced beating me over the head and back" with the black jack; that he had struck him two or three times and knocked him down when he got hold of the black jack and tried to hit the marshal, but he dodged, and the lick aimed for the marshal struck Clay. He further said that when he took the black jack away from the marshal and attempted to strike him with it he believed it was necessary that he should do so to protect himself from other and greater injuries at the hands of the marshal.

There is no dispute about the fact that Caperton knew Short was the town marshal or about the fact that when the marshal sought to arrest Caperton he was drunk and disorderly on the streets of the town in the presence of the marshal, and therefore the marshal had the right to arrest him without a warrant as a public offense was being committed by Caperton in his presence. He also had the right to use such means as appeared to him at the time to be necessary to accomplish the arrest, even if it was necessary in doing so to strike Caperton with the black jack for the purpose of subduing him so that he might be able to arrest and take him to jail, and also the right to summon Clay to his assistance to aid in the arrest.

Caperton, as we have seen, testified that when the marshal came to where he was he commenced beating him over the head and back, knocking him down two or

three times before he took the black jack from the officer and tried to hit him with it to prevent the infliction of other and greater injuries, but he does not say that the officer struck him before he attempted to arrest or that he was not resisting the arrest when struck or that the officer had any spite or ill will toward him, nor does he attempt to give any account of what took place between them just before the officer struck him.

Under these circumstances counsel for Caperton insist that he was entitled to an instruction on the subject of self-defense. The conditions under which a person who has been arrested or attempted to be arrested may rely on the law of self-defense in a prosecution for assaulting or shooting or wounding the officer or one assisting him as Clay was are set forth in the case of Fleetwood v. Com. 80 Ky. 1.

In that case Fleetwood was indicted and convicted for shooting and killing Mefford, a constable who was attempting to arrest him. The trial court instructed the jury that if Fleetwood was committing a public offense in the presence of Mefford then Mefford had the right to arrest him without a warrant and to use whatever force was necessary to accomplish it, even to taking the life of the accused, and that if Fleetwood resisted or refused to be arrested Mefford had the right by superior force to compel him to submit to the arrest.

The court further told the jury that if Fleetwood submitted to the arrest or had been by superior force placed in arrest and Mefford after that time was about to shoot Fleetwood or do him some great bodily harm then Fleetwood had the right to use such means as seemed necessary to protect him from the impending danger.

In approving the instructions given by the trial court in this case this court said on the subject of self-defense that: ''The law of self-defense, as applicable to encounters between private persons, does not apply, unless the person resisting the arrest has reasonable grounds to believe, and does believe, that the officer is not acting in good faith in the attempt to arrest, but is using his official position to gratify personal feeling against the person sought to be arrested, and that by submitting to arrest and to being disarmed he will, by reason of this fact, be in danger of great bodily harm or of losing his life.'' See also Minniard v. Com., 87 Ky. 213; Keady v. People, 32 Colo. 57, 66 L. R. A. 353; State v. Durham (1903), 141 N. C. 741, 5 L. R. A. 1016 (1906).

Under the law as laid down in this case, which has been frequently followed, we do not think Caperton was entitled to an instruction on the subject of self-defense, as there is no evidence whatever to show that the marshal was not acting in good faith, or that he was using his position to gratify personal feeling against Caperton. On the contrary, it appears that the officer was a friend of Caperton and tried to get him to go home when he might have put him in jail.

It must be kept in mind that the law of self-defense as broadly administered in cases between individuals is not applicable when a party attempted to be arrested or under arrest seeks to avail himself of the doctrine of self-defense in a prosecution for attacking or assaulting or shooting or wounding the arresting officer. In such a state of case the presumption will be indulged that the officer has not exceeded his duty and powers in making the arrest if it is made in obedience to a warrant, or when the person arrested has committed a public offense in his presence, and under these conditions if the offender desires to rely on self-defense he must overcome this presumption and establish his right to depend on the excuse of self-defense by more evidence, direct or circumstantial, than the mere statement that the officer came up and commenced beating him. He must show, for example, that the officer was unfriendly to him or that he had quietly submitted to arrest and thereafter the officer without provocation commenced to beat or injure him, or that the arrest was not in good faith, or was made for the purpose of taking some undue advantage of him so that the officer might injure or kill him.

In this case Caperton was not asked nor did he say that he had submitted to arrest when the officer struck him, or that he was not resisting the right of the officer to arrest him when struck, or that the officer had any bad feeling toward him, or state any other facts that would overcome the presumption that the officer did more than his duty. He contented himself with the mere statement that the officer walked up and commenced beating him over the head and back. It should also be said that this statement of Caperton was corroborated by his brother and two other witnesses, but neither of these persons enlarged on the statement made by Caperton but merely described what occurred in the short way that he did.

In view of the fact that Caperton was represented by capable counsel we may assume that they acted advis-

ably in not attempting to show by Caperton or his witnesses what was said or done by Caperton and the officer immediately before Caperton says the officer commenced beating him.

As Caperton, under the circumstances stated, would not have been entitled to a self-defense instruction if he had struck Short with the black jack, he was not of course entitled to such an instruction when charged with striking Clay, because he could only defend his right to strike Clay upon the ground that he had the right to strike Short and in attempting so to do accidentally hit Clay.

The indictment was found under section 1166 of the Kentucky Statutes, and the court, after properly instructing the jury under this section, further instructed them under section 1242 upon the theory that the offense described in section 1242 was a degree of the offense described in section 1166. In instructing the jury under section 1242 the trial court committed error. Riggs v. Com., 17 Ky. Law Rep. 1015; McWilliams v. Com., 18 Ky. Law Rep. 92.

In lieu of the instruction given under section 1242 the jury should have been instructed on the subject of assault and battery, which is a degree of the offense described in section 1166; but the error committed by the court in this respect was not, under the authority of the cases cited, prejudicial to Caperton, because the jury found him guilty under section 1166.

Nor was Caperton entitled to an instruction on the subject of accidental or unintentional striking. Such an instruction on the facts had no place in the case. If he was not entitled to a self-defense instruction he was not entitled to one on the subject of accidental or unintentional striking. Caperton could not shield himself from the consequences of his act upon the ground that it was accidental or unintentional, when, as we have found, he had no legal excuse for attempting to strike Short, although if his attempt to strike Short had been justifiable under the law of self-defense then he would have been entitled to an acquittal if in an effort to hit Short he unintentionally hit Clay.

Error is also suggested in the erroneous omission of a word in instruction number two, but this error was wholly immaterial, because the jury did not find the defendant guilty under this instruction.

The conduct of the Commonwealth's attorney in his argument to the jury is criticised, but we find no sub-

stantial merit in the criticism. Nor was the failure of the trial judge to admonish the jury that the testimony of witnesses for the Commonwealth to show the bad character of Caperton merely went to his credibility as a witness prejudicial.

Upon the whole case we find no substantial error in the record, and the judgment is affirmed.